UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RASHEED AHMAD,

               Plaintiff,

       – *against* –

CITY OF NEW YORK,
METROPOLITAN TRANSPORTATION
AUTHORITY, TRIBOROUGH BRIDGE
AND TUNNEL AUTHORITY, *and*
OFFICER BRIAN HU, *in his individual
and official capacity*,

               Defendants.

**OPINION & ORDER**

25-cv-06675 (ER)

RAMOS, D.J.:

    Rasheed Ahmad, who is *pro se*, brought this action against the City of New York, the Metropolitan Transportation Authority, the Triborough Bridge and Tunnel Authority, and Brian Hu (collectively "the Defendants") on August 11, 2025, alleging violations of the United States Constitution, the New York Constitution, and New York common law. Doc. 1. Before the Court is his motion for a preliminary and permanent injunction. *See* Doc. 6. For the reasons explained below, the motion is DENIED.

## I.    FACTUAL BACKGROUND[1]

    On May 13, 2024, Ahmad was driving his three children to school when he was stopped by Officer Brian Hu in the Bronx.[2] Doc. 1 ¶ 9. Hu made the stop pursuant to a state-led enforcement campaign against fraudulent license plates known as "Operation

---

[1] Unless otherwise noted, the factual background is drawn from the factual allegations in the complaint, which, for the purposes of deciding this motion, the Court assumes are true. *See American Future Fund, Inc. v. New York State Board of Elections*, No. 25 Civ. 8151 (JHR), 2025 WL 3012555, at *1 n.3 (S.D.N.Y. Oct. 28, 2025) (taking the same approach). The Court does not, however, make any factual findings, and nothing in this order should be construed as such. *Id.*

[2] The complaint alleges that Hu is "employed by the TBTA under the authority of the MTA." Doc. 1 ¶ 8.

Plate Check."[3]  *Id.* ¶ 10.   At the time of the stop, Ahmad's vehicle displayed what Ahmad refers to as a "private plate."[4]  *Id.* ¶ 21.  It was also titled to an entity, Franswar Trust, of which Ahmad served as a trustee.  *Id.* ¶¶ 5, 9.

During the stop, Ahmad told Hu that he was acting lawfully and that the trust lawfully owned the vehicle.  *Id.* ¶ 11.  He also presented documentation to Hu regarding the trust.  *Id.*  Hu, however, ignored the documentation, and issued Ahmad several citations directing the matter for adjudication in Queens.  *Id.*  In doing so, Hu stated that he understood Ahmad's "lawful position" and that he could not legally impede Ahmad's travel.  *Id.* ¶ 16.  Hu explained, however, that he was issuing the citations "anyway" because, after using an automatic license plate recognition tool, he had determined that Ahmad was using a private trust plate.  *Id.*  The stop lasted for approximately one hour.  *Id.* ¶ 9.

Sometime after the stop, Queens prosecutors also filed a criminal charge against Ahmad based on the incident.  *Id.* ¶ 14.  In an unsworn statement attached to the complaint, Ahmad states that the charge was for aggravated unlicensed operation of a motor vehicle in the second degree.  *See* N.Y. Veh. & Traf. Law § 511(2); Doc. 1-1 at 1. The charge was later dismissed as "legally insufficient."  Doc. 1 ¶ 14.  The citations were also dismissed by the Department of Motor Vehicles on July 10, 2025.  *Id.* ¶ 13.

---

[3] Although the complaint alleges that Operation Plate Check targets "alternative license plates," Doc. 1 ¶ 10, in support of this assertion, it links to an announcement by the Governor's Office that states that the "operation sought to identify vehicles on New York State roadways with fictitious license plates and fake 'temp tags' in response to an increase in the use of fraudulent plates," *Operation Plate Check: Governor Hochul Announces Results of Enforcement Efforts to Maintain Safer Roadways*, New York Governor's Office (May 16, 2025), https://www.governor.ny.gov/news/operation-plate-check-governor-hochul-announces-results-enforcement-efforts-maintain-safer.  The announcement is therefore incorporated by reference into the complaint.  *See Mockingbird 38, LLC v. International Business Times, Inc.*, No. 21-CV-283 (LJL), 2022 WL 154137, at *4 n.4 (S.D.N.Y. Jan. 18, 2022).

[4] The complaint refers to "private plate[s]," "private trust plate[s]," and "alternative license plates," but does not define these terms.  Doc. 1 ¶¶ 10, 16, 21.  The Court understands these terms to refer to license plates that were made by a private individual, rather than issued by a state motor vehicle authority.

## II.    PROCEDURAL HISTORY

Ahmad filed his complaint and motion for a preliminary and permanent injunction on August 11, 2025.  Docs. 1, 6.  His motion seeks to enjoin the "Defendants, their officers, agents, and employees from initiating any stop, detention, or citation of [him] solely because of the use of a private trust plate."  Doc. 6 at 3.  The City of New York filed its opposition to the motion on October 17, 2025.  Doc. 21.  The Metropolitan Transportation Authority, the Triborough Bridge and Tunnel Authority, and Brian Hu (collectively, the "MTA Defendants") did the same on November 4, 2025.  Doc. 25.  The Court then directed Ahmad to file a consolidated reply by November 10, 2025, should he wish to do so.  Doc. 26.  Ahmad filed his reply on November 21, 2025, Doc. 28, along with a motion requesting that the Court excuse his late filing, Doc. 27.

## III.    LEGAL STANDARD

A preliminary injunction is an "extraordinary and drastic remedy."  *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  Among these factors, irreparable harm is "the single most important prerequisite."  *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983).  To satisfy this requirement, a plaintiff must demonstrate that, absent preliminary relief, he will suffer an "actual and imminent" injury that "cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enterprise Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (quoting *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir. 2005)).  If a plaintiff cannot show irreparable harm, he is not entitled to preliminary injunctive relief. *Id.* at 66–67.

"[T]he standard for a permanent injunction is essentially the same as that for a preliminary injunction, with the exception that the plaintiff must show actual success on the merits in a permanent injunction rather than a likelihood of success for a preliminary injunction." *Line Communications Corp. v. Reppert*, 265 F. Supp. 2d 353, 353 n.1 (S.D.N.Y. 2003). Thus, to receive a permanent injunction, "a plaintiff must both succeed on the merits and demonstrate the 'absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Davis v. Shah*, 821 F.3d 231, 243 (2d Cir. 2016) (quoting *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006)).

## IV.   DISCUSSION

### A.  Motion to excuse the late reply

The Court will consider Ahmad's consolidated reply, notwithstanding his failure to file by the November 10, 2025, deadline. The Court does so, however, only to the extent that the reply supports arguments raised in Ahmad's initial motion for a preliminary and permanent injunction. *Vinci Brands LLC v. Coach Services Inc.*, No. 23-CV-5138 (LGS) (VF), 2025 WL 2443620, at *7 (S.D.N.Y. Aug. 25, 2025) ("It is well settled that arguments raised for the first time in a reply are waived.").

### B.  Motion for a preliminary injunction

The motion for a preliminary injunction is denied because Ahmad has not shown that he is likely to suffer irreparable harm or succeed on the merits.

#### 1.  *Ahmad has not shown irreparable harm.*

In his motion, Ahmad argues that he is likely to suffer irreparable harm in the form of the "threat of ongoing and repeated unlawful stops," "disrupt[ion] [of his] familial duties," and "lasting emotional injury." Doc. 3 at 3.[5] The Defendants counter

---

[5] In his reply, Ahmad also asserts for the first time that because he alleges "repeated, escalating constitutional violations" in the form of "unlawful stops, fabricated allegations, use of unmarked vehicles in violation of state law, physical injury, and child endangerment," he has shown irreparable injury. Doc. 28 at 1–3. Even if the Court considered this new argument, *see Vinci Brands*, 2025 WL 2443620, at *7, it notes that these allegations are not included in the complaint or supported by the record. And, in any event, Ahmad has not shown that these injuries are not compensable via damages. *See CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010).

4

that Ahmad's allegation that he was stopped once in the past is too speculative to show that he is likely to be injured in the future.  Doc. 21 at 3–4; Doc. 25 at 2–3.  And they further contend that any harm that resulted from the prior stop is compensable by damages and thus negates any need for injunctive relief.  Doc. 21 at 3; Doc. 25 at 3.

The Court agrees that Ahmad has failed to show that he is likely to suffer irreparable injury.  At bottom, Ahmad's claims are premised on a single stop that occurred on May 13, 2024.  Doc. 1 ¶¶ 9–16; Doc. 6 at 1–2.  And though Ahmad claims that the stop caused him injuries, *see* Doc.1 ¶ 16, he has not shown that these injuries cannot be remedied by damages, *see CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F. App'x 779, 781 (2d Cir. 2010) ("[A]n injury compensable by money damages is insufficient to establish irreparable harm.").  Indeed, Ahmad seeks monetary damages in his complaint.  Doc. 1 at 8–9.

Moreover, even if the stop was unlawful, Ahmad has not shown that a future stop based on his use of a "private trust plate" is "actual and imminent."[6]  *Dexter 345 Inc. v. Cuomo*, 663 F.3d 59, 63 (2d Cir. 2011); *cf. Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (explaining that, to establish standing for injunctive relief, a plaintiff "cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future").  Thus, his concern that there is a possibility that he will suffer emotional injuries and injury to his performance of his familial duties is too speculative to support preliminary injunctive relief.  *Borey v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991) ("[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction.").

In resisting this conclusion, Ahmad relies on *Elrod v. Burns*, 427 U.S. 347, 373 (1976), for the proposition that the "threat of ongoing and repeated unlawful stops

---

[6] Ahmad did append to his complaint a document in which he "detail[s] the numerous instances where [he] has faced unwarranted legal actions."  Doc. 1-1 at 1.  But none of the tickets or charges listed in that document appear to relate to his use of a "private trust plate."  *See id.* at 1–3.

constitutes irreparable harm," Doc. 6 at 3.  But *Elrod* is inapposite given the factual and legal differences from this case.  In *Elrod*, it was "clear" that the plaintiffs' "*First Amendment* interests were either threatened or in fact being impaired *at the time relief was sought*."  *Id.* (emphasis added).  Because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," the Court reasoned that this showing—coupled with the plaintiffs' demonstration that they were likely to succeed on the merits—supported preliminary injunctive relief.  *Id.* 373–74.  Here, by contrast, Ahmad has not shown that his Fourth Amendment rights were "threatened or in fact being impaired" at the time that he sought injunctive relief.  Thus, even if the Court were to apply *Elrod*'s logic outside of the First Amendment context, Ahmad has not shown that he is likely to suffer irreparable injury.[7]

   2.   *Ahmad has not shown a likelihood of success on the merits.*

   Ahmad has also not demonstrated that he is likely to succeed on the merits.  At its core, Ahmad's motion rests on the contention that Officer Hu lacked probable cause to stop his vehicle based solely on his use of a "private trust plate."  Doc. 6 at 3.  But, as the MTA Defendants note, New York law requires drivers to operate vehicles with valid, publicly issued license plates.  *See* N.Y. Veh. & Traf. Law § 402(1)(A) ("No person shall operate, drive or park a motor vehicle on the public highways of this state unless such vehicle shall have . . . a set of number plates issued by the commissioner . . . ."); *see also Yun v. City of New York*, No. 19-CV-9267 (CM), 2019 WL 6918515, at *3 (S.D.N.Y. Dec. 19, 2019) (noting that the use of so-called "private" license plates violates New York law).

---

[7] Ahmad's complaint does allege that the stop was pursuant to a state-led enforcement campaign that "target[s] alternative license plates" known as "Operation Plate Check."  Doc. 1 ¶ 10.  But even if this allegation sufficed to show that he is likely to be imminently stopped for his "private trust plate," the Court concludes that Ahmad is not entitled to preliminary injunctive relief because, for the reasons explained below, he has not shown that he is likely to succeed on the merits.

In his reply, Ahmad does not dispute that, under New York law, drivers are not permitted to use so-called "private plates." Nor does he dispute that he was driving with a noncompliant license plate. Indeed, his complaint alleges that he was using a "private plate." Doc. 1 ¶ 21. Thus, it appears from the face of the complaint that Officer Hu did have probable cause to stop his vehicle insofar as he witnessed Ahmad's use of a privately issued—and therefore illegal—license plate. *Id.* ¶ 16.[8]

To be sure, Ahmad does argue that "the use of a personal vehicle for private travel is not a privilege subject to licensing but a common right." *Id.* ¶ 20. But insofar as Ahmad means to argue that the state is prohibited from regulating his use of a "private trust plate," he has not shown that he is likely to succeed on the merits of his claims based on this argument. Indeed, the only authority that Ahmad cites for this proposition is a case decided by the Illinois Supreme Court in 1905, *Christy v. Elliott*, 216 Ill. 31 (1905), which *rejected* a state constitutional challenge to a statute regulating the conduct of drivers on public highways, *see id.* at 39–45.

Ahmad finally asserts that because the resulting citation and criminal charge— along with other, unrelated summonses and charges—were later dismissed, the Court must infer that the Officer Hu lacked probable cause for the May 13, 2024, stop. Doc. 6 at 2; Doc. 28 at 2–3; Doc. 1 ¶¶ 13–14. But the mere fact of dismissal, even for "legal insufficiency," does not conclusively establish, or even necessarily suggest, that Officer Hu lacked probable cause; nor do the cases that Ahmad cites support that broad proposition. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (explaining that the fact that a conviction was dismissed, acquitted, or reversed on appeal is merely

---

[8] It is not clear whether Ahmad is claiming that, in addition to being stopped for his "private" license plates, he was also stopped because his vehicle is registered to a trust. *Compare* Doc. 1 ¶ 16 (alleging that he was stopped "solely due to the private trust plate"); *with id.* ¶ 38 (seeking injunction against stops "based on the presence of a trust-owned or private plate"); *and id.* ¶ 39 (referring to the "targeting [of] trust-held vehicles or alternative license plates" and alleging that he was ticketed "solely based on the presence of a trust plate"). To the extent that he does mean to raise this separate argument, however, he does not identify any authority that suggests that the registration of his vehicle to a trust was legal.

"evidence" that is "admissible to refute" the "existence of probable cause" (quoting

*Broughton v. State*, 373 N.Y.2d 451, 458 (1975))); *People v. Alejandro*, 70 N.Y.2d 133,

135 (1987) (concluding that an information that "contained no allegation[s] [to] support[]

an essential element of the charge" was properly dismissed). Thus, Ahmad has not shown

that he is likely to succeed on this, or any other, basis.

## V.    CONCLUSION

For the reasons explained above, Ahmad's motion for a preliminary and

permanent injunction is therefore DENIED.[9] The Clerk of Court is respectfully directed

to terminate the motions, Docs. 6, 27.

It is SO ORDERED.

Dated:    December 10, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.

---

[9] Ahmad's motion for a permanent injunction is denied without prejudice to renewal should he ultimately prevail on the merits. *See Simmons v. NYC Department of Corrections*, No. 23-CV-7829 (RPK) (RML), 2025 WL 821682, at *4 (E.D.N.Y. Mar. 14, 2025) (explaining that because "[t]here has not yet been any adjudication of the merits of [the] plaintiff's claims, . . . [the] plaintiff is not entitled to a permanent injunction at this stage").