UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RASHEED AHMAD,

Plaintiff,

*– against –*

CITY OF NEW YORK, METROPOLITAN TRANSPORTATION AUTHORITY, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, *and* OFFICER BRIAN HU, *in his individual and official capacity*,

Defendants.

**OPINION & ORDER**

25-cv-06675 (ER)

RAMOS, D.J.:

Rasheed Ahmad brought this *pro se* action against the City of New York ("the City"), the Metropolitan Transportation Authority ("MTA"), the Triborough Bridge and Tunnel Authority ("TBTA"), and Brian Hu (collectively with the MTA and the TBTA, "the MTA Defendants") on August 11, 2025, alleging violations of the United States Constitution, the New York Constitution, and New York common law. Doc. 1. Before the Court is the City's motion to dismiss the complaint pursuant to Rule 12(b)(6) and the MTA Defendants' motion to dismiss pursuant to Rules 12(b)(6) and 12(b)(1). For the reasons set forth below, the motions are GRANTED.

## I. FACTUAL BACKGROUND[1]

Ahmad was driving his three children to school on May 13, 2024, when he was stopped by Officer Brian Hu in the Bronx.[2] Doc. 1 ¶¶ 9–10. At the time of the stop,

[1] The following factual background is based on Ahmad's complaint, Doc. 1, and the document attached to the complaint, Doc. 1-1, which the Court accepts as true for purposes of this motion. *See Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The complaint alleges that Hu is "employed by the TBTA under the authority of the MTA." Doc. 1 ¶ 8.

Ahmad's vehicle had a "private" license plate.[3] *Id.* ¶ 21. Ahmad claims that at all relevant times the vehicle was titled to an entity, Franswar Trust, for which Ahmad served as trustee. *Id.* ¶¶ 5, 9.

Ahmad alleges that during the stop, he asserted his legal status as trustee and presented Hu with documentation that the trust owned the vehicle. *Id.* ¶ 11. Hu allegedly ignored Ahmad's documentation, issued Ahmad several traffic citations, and "directed the matter for adjudication in Queens." *Id.* Hu stated that he understood Ahmad's "lawful position" and that he could not legally impede Ahmad's travel. *Id.* ¶ 16. Hu explained, however, that he was issuing the citations "anyway" because, using an automatic license plate recognition tool, he had determined that Ahmad was using a private trust plate. *Id.* The stop lasted for approximately one hour. *Id.* ¶ 9. Ahmad states that he was never formally arrested by Hu but claims that he was subjected to "custodial detention" during this time. *Id.* ¶ 15.

Ahmad alleges that Hu conducted the stop pursuant to a state-led enforcement campaign known as "Operation Plate Check," which was announced by the New York Governor's office after the stop at issue. *Id.* ¶ 10. Ahmad claims this policy targeted "alternative license plates." *Id.* ¶ 10.

Ahmad alleges that the traffic citations issued by Hu were dismissed in full by the "Department of Motor Vehicles" on July 10, 2025. *Id.* ¶ 13. Sometime after the stop, Queens prosecutors also filed a criminal charge against Ahmad based on the incident. *Id.* ¶ 14. In an unsworn statement attached to the complaint, Ahmad states that the charge was for aggravated unlicensed operation of a motor vehicle in the second degree. *See* N.Y. Veh. & Traf. Law § 511(2)(a); Doc. 1-1 at 1. The criminal charge was later dismissed as "legally insufficient." Doc. 1 ¶ 14.

---

[3] The complaint refers to "private plate[s]," "private trust plate[s]," and "alternative license plates," but does not define these terms. Doc. 1 ¶¶ 10, 16, 21. The Court understands these terms to refer to license plates that were made by a private individual or entity, as opposed to license plates issued by a state motor vehicle authority.

## II. PROCEDURAL HISTORY

Ahmad filed his complaint on August 11, 2025. Doc. 1. The complaint alleges that the City and the MTA Defendants: (1) stopped and detained Ahmad without probable cause in violation of the Fourth Amendment of the U.S. Constitution and Article I, §§ 6 and 12 of the New York Constitution; (2) initiated citations outside of the "lawful jurisdiction" and caused Ahmad to defend against legally insufficient and retaliatory charges in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and Article I, §§ 6 and 12 of the New York Constitution; (3) engaged in a custom, policy, or practice to stop vehicles with alternative plates and failed to train TBTA agents, which makes the City and the MTA Defendants liable for Hu's constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978); (4) negligently and grossly negligently stopped, detained, and issued citations to Ahmad without probable cause in violation of 42 U.S.C. § 1983, New York common law, and the New York Constitution; (5) committed intentional infliction of emotional distress in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1983, New York common law, and Article I, §§ 6 and 12 of the New York Constitution; (6) committed an abuse of process by issuing multiple tickets and initiating criminal proceedings without probable cause in violation of New York common law, the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, 42 U.S.C. § 1983, and the New York Constitution; and (7) willfully and maliciously subjected Ahmad to deprivation of rights secured by the Constitution in violation of 18 U.S.C. § 242. *Id.* at 5–8. The complaint also seeks equitable relief in the form of a declaration that the stop and citations were unlawful, and an injunction to prohibit "further discriminatory or retaliatory enforcement of traffic laws targeting trust-held vehicles and license plates." *Id.* at 8–9.

Ahmad submitted a request seeking to proceed *in forma pauperis* on August 11, 2025. Doc. 4. The Court granted Ahmad leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 on August 19, 2025. Doc. 10.

Ahmad filed a motion for a preliminary and permanent injunction on August 11, 2025. Doc. 6. The Court denied this motion on December 10, 2025. Doc. 32.

The City and the MTA Defendants filed separate motions to dismiss Ahmad's complaint on January 27, 2026. Docs. 36, 39. Ahmad filed his opposition to the motion to dismiss on May 14, 2026. Doc. 46.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

A district court must dismiss a case under Rule 12(b)(1) for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "Standing is a federal jurisdictional question determining the power of the court to entertain the suit." *Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal quotations omitted). "To satisfy this jurisdictional requirement, (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Village of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)) (internal quotations omitted). At the pleading stage, a plaintiff bears the burden of alleging facts that affirmatively and plausibly suggest that he has standing to sue, *see Cortlandt Street Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 417 (2d Cir. 2015) (citation omitted), and must do so "for each claim and form of relief sought," *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (citation omitted).

**B. Failure to State a Claim**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "When ruling on a Rule 12(b)(6) motion, the Court must accept all factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Local 171 Pension Fund v. Stone*, No. 24 CIV. 01769 (MMG), 2025 WL 936538, at *1 (S.D.N.Y. Mar. 27, 2025) (citing *Koch v. Christie's International PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

**C. *Pro Se* Litigants**

The Court holds submissions by *pro se* litigants to "less stringent standards than formal pleadings drafted by lawyers," *Santiago v. United States*, 222 F.Supp.3d 353, 356 (S.D.N.Y. 2016) (quoting *Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir. 1993)), and is obligated to liberally construe their pleadings "to raise the strongest arguments that they suggest." *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). Nonetheless, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## IV. AHMAD'S OPPOSITION AND SUPPLEMENTAL AUTHORITY DOCUMENTS

Ahmad's opposition brief contains legal claims of false arrest and malicious prosecution, which were not expressly raised in his complaint. Doc. 46 at 3. The MTA Defendants argue that these causes of action are not presently before the Court because they were not raised in the complaint. Doc. 50 at 8 n.3. Ahmad also filed a document alongside his opposition brief on May 14, 2026, providing "supplemental context" to his complaint. Doc. 47. The City argues that the Court should not consider this documentation for purposes of the motion to dismiss. Doc. 51 at 2–4.

Generally, courts cannot consider documents outside of the pleadings on a motion to dismiss. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). However, given "the liberality afforded *pro se* litigants, in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to his opposition papers." *Herbert v. George*, No. 24 Civ. 1780 (PMH), 2025 WL 1268863, at *3 (S.D.N.Y. Apr. 30, 2025) (internal quotations and citations omitted). With respect to new legal claims, a "*pro se* plaintiff may not raise 'entirely new' causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if 'the claims could have been asserted based on the facts alleged in the complaint.'" *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (quoting *Vlad-Berindan v. MTA New York City Transit*, No. 14 CIV. 675 (RJS), 2014 WL 6982929, at *5 (S.D.N.Y. Dec. 10, 2014)).

Because Ahmad is *pro se*, consistent factual allegations raised in his opposition brief, Doc. 46, and the supplemental authority, Doc. 47, will be read as supplemental to his complaint.

With respect to newly raised legal claims, the Court will not consider Ahmad's claim that he was falsely arrested because this directly contradicts his complaint.

*Compare* Doc. 1 ¶ 15 (alleging that Ahmad "was never formally arrested"), *with* Doc. 46 at 3 (alleging that Ahmad was "detained and arrested"); *see also Mathie v. Goord*, 267 F. App'x 13, 14 (2d Cir. 2008) (affirming the district court's refusal to consider a legal claim raised outside of a *pro se* plaintiff's complaint because the complaint did not "encompass that claim"). However, the Court will consider Ahmad's malicious prosecution claim because, although it is not explicitly listed as a claim for relief in the complaint, it is referenced in the complaint and could have been asserted based on the facts alleged in the complaint. *See* Doc. 1 ¶¶ 14, 16.

## V. THE MTA DEFENDANTS' MOTION TO DISMISS THE FEDERAL CLAIMS

### A. Standing for Equitable Relief

The MTA Defendants argue that Ahmad lacks standing to seek injunctive and declaratory relief pursuant to Rule 12(b)(1). Doc. 40 at 16. Ahmad argues that he has plausibly alleged that he has standing to seek equitable relief by alleging "repeated encounters" and "an ongoing likelihood of future constitutional injury" based on his use of trust-owned or private plates. Doc. 46 at 4; Doc. 1 ¶ 38.

"Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a real or immediate threat of injury." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotations and citations omitted). Past injuries "do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Id*.

As stated in this Court's prior ruling, Ahmad's claims are premised on a single stop which, even if unlawful, is too speculative to show that that he is likely to be injured in a similar manner in the future. *See* Doc. 32 at 4–6. Therefore, Ahmad lacks standing to seek prospective equitable relief pursuant to Rule 12(b)(1). *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–07 (1983) (holding that a plaintiff lacked standing to seek injunctive relief under analogous circumstances). Accordingly, the federal claims for

injunctive relief are dismissed, and the Rule 12(b)(6) analysis that follows relates only to Ahmad's federal claims for damages.

**B. Failure to State a Claim**

*1. Fourth Amendment Claim*

The MTA Defendants argue that because Ahmad was operating a vehicle with "private trust plates," Hu had probable cause to stop him, thus barring a Fourth Amendment claim. Doc. 40 at 8. Ahmad argues that Defendants' reliance on traffic laws does not cure the constitutional defect because Hu had not "objectively observed a violation" before making the stop, instead using the private plates as a pretext to investigate whether a violation existed. Doc. 46 at 4–5.

The Fourth Amendment guarantees a right against "unreasonable searches and seizures." U.S. Const. amend. IV. A temporary detention during a traffic stop, "even if only for a brief period and for a limited purpose," constitutes a seizure within the meaning of the Fourth Amendment. *United States v. Overton*, No. 24-2071-CR, 2025 WL 2753628, at *1 (2d Cir. Sept. 29, 2025) (quoting *United States v. Wallace*, 937 F.3d 130, 137 (2d Cir. 2019)). "Traffic stops are presumptively reasonable under the Fourth Amendment if the officer has probable cause to believe that a traffic infraction has occurred." *United States v. Foreste*, 780 F.3d 518, 523 (2d Cir. 2015). An officer has probable cause to stop the driver of a vehicle when he observes the driver committing a traffic offense. *United States v. Guillen*, No. 17 CR. 512 (KMW), 2018 WL 5831318, at *11 (S.D.N.Y. Nov. 7, 2018).

In this Circuit, a traffic stop is constitutional when it is supported by an officer's reasonable suspicion that the person stopped has committed a traffic violation, which is a less demanding standard than probable cause. *United States v. Stewart*, 551 F.3d 187, 193 (2d Cir. 2009) (holding that reasonable suspicion is a sufficient basis under the Fourth Amendment to make a traffic stop); *see also United States v. Overton*, 2025 WL 2753628, at *1 (holding that an officer making a traffic stop must have either probable cause *or*

reasonable suspicion that the person has committed a traffic violation). "Reasonable suspicion 'requires more than a hunch' and 'is satisfied as long as authorities can point to specific and articulable facts which, taken together with rational inferences from those facts, provide a particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Craft*, No. 23 CR. 00178 (PMH), 2023 WL 6215326, at *4 (S.D.N.Y. Sept. 25, 2023) (quoting *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022), *aff'd,* No. 24-3210-CR, 2026 WL 1759613 (2d Cir. June 18, 2026)).

Accepting the allegations in Ahmad's complaint as true, Hu stopped him after using an automatic license plate recognition tool to "target" Ahmad's vehicle and issued him a ticket "solely due to the private trust plate." Doc. 1 ¶ 16. Under New York law, drivers are required to use state-issued license plates, rather than private plates. *See* N.Y. Veh. & Traf. Law § 402(1)(a) ("No person shall operate . . . a motor vehicle on the public highways of this state unless such vehicle shall have . . . a set of number plates issued by the commissioner with a number and other identification matter if any, corresponding to that of the certificate of registration conspicuously displayed . . . ."). Ahmad does not dispute that drivers are legally required to use plates issued by the state pursuant to New York Vehicle & Traffic Law § 402(1)(a).[4] Nor does he dispute that he was driving with a private plate that was not issued by the state. *See* Doc. 1 ¶¶ 16, 21. Therefore, the fact that Hu identified Ahmad's vehicle as having a private trust plate establishes an objective basis for Hu to have suspected that Ahmad committed a traffic violation. Because Hu's stop was based on the observation of Ahmad's private vehicle plates, Hu initiated the stop with both reasonable suspicion and probable cause. Under the Fourth Amendment, this is a valid basis on which to make a traffic stop. *Stewart*, 551 F.3d at 193. Accordingly,

[4] Ahmad cites New York Estates, Powers, and Trusts Law § 7-2.1 to assert that trusts are a recognized legal arrangement capable of holding title to motor vehicles. Doc. 47 at 3. However, nothing in the language of that statute provides any legal authority for the proposition that a vehicle owner can choose to use a private trust plate instead of a state-issued plate as required by law. *See generally* N.Y. Est. Powers & Trusts Law § 7-2.1.

Ahmad has not plausibly alleged that Hu's conduct violated his constitutional right against unlawful seizure.

Ahmad's argument that Defendants attempt to retroactively create probable cause based on information obtained after the seizure is unavailing because his own complaint makes clear that Hu stopped him based on his use of the private plate. Doc. 1 ¶ 16. Further, the cases Ahmad cites to support the proposition that Hu lacked probable cause are inapposite. *People v. Hinshaw* is not controlling because it involved a state trooper who used a license plate recognition tool *after* having already stopped the driver, and the recognition tool produced a result that the vehicle had been impounded, which is not a traffic violation under New York law. 35 N.Y.3d 427, 437 (2020). In the seminal case *Terry v. Ohio*, the Supreme Court held that, under certain circumstances, a police officer could approach a person to investigate criminal behavior without probable cause to make an arrest. 392 U.S. 1, 22 (1968). Neither of these cases preclude a finding that Hu had both probable cause and reasonable suspicion.[5]

*a. Leave to Amend Would Be Futile*

Defendants argue that Ahmad should not be granted an opportunity to amend his complaint because he cannot cure the legal defects of his claims. Docs. 38 at 15–16, 40 at 18. Ahmad does not address these arguments.

As a general matter, the Court "has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). While "a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim," *Matima v. Celli,* 228 F.3d 68, 81 (2d Cir.

[5] Ahmad also argues that the subsequent dismissal of the citations and criminal charge supports his claim that Hu's stop lacked probable cause. Doc. 1 ¶¶ 13–14. However, the eventual dismissal of charges has no bearing on whether Hu had probable cause at the time of the stop. *See Bennett v. Vidal*, 267 F. Supp. 3d 487, 496 (S.D.N.Y. 2017) ("[T]he fact that the charges against the plaintiff were ultimately dismissed does not refute the existence of arguable probable cause.") (citation omitted).

2000) (internal quotations and citations omitted), "leave to amend a complaint may be denied when amendment would be futile," *Tocker v. Philip Morris Companies, Inc.*, 470 F.3d 481, 491 (2d Cir. 2006). "An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss." *George v. Pathways to Housing, Inc.*, No. 10 Civ. 9505 (ER), 2012 WL 2512964, at *7 (S.D.N.Y. June 29, 2012) (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53–54 (2d Cir. 1999)).

Granting Ahmad leave to amend his complaint cannot solve the substantive legal defect that he cannot plausibly allege an unconstitutional seizure where Hu had both reasonable suspicion and probable cause to stop him. Thus, there is no indication that, if given leave to amend, Ahmad could state a valid Fourth Amendment claim. *See Fox v. Lee*, No. 915 Civ. 0390 (TJM) (CFH), 2018 WL 11468102, at *7 (N.D.N.Y. Mar. 21, 2018), *aff'd,* No. 915 CIV. 390 (TJM) (CFH), 2018 WL 5729289 (N.D.N.Y. Nov. 2, 2018) ("[A]s plaintiff has not stated a prima facie Fourth Amendment violation, such amendment would be futile, and plaintiff's motion on this ground is denied.").

Accordingly, the Court dismisses Ahmad's Fourth Amendment claim with prejudice.

*2. Substantive Due Process Claim*

Ahmad argues that Hu used the legal process for harassment and retaliation, which "shocks the conscience within the meaning of substantive due process jurisprudence." Doc. 1 ¶ 37.[6] The MTA Defendants argue that an allegedly wrongful traffic stop cannot be the basis for a substantive due process claim because this constitutional issue is addressed instead by the Fourth Amendment. Doc. 40 at 15.

---

[6] Ahmad raises this substantive due process claim for the first time under the "abuse of process" heading, rather than under the heading of his Fourteenth Amendment claim. *Compare* Doc. 1 ¶ 37, *with Id*. ¶¶ 26–28. The Court will liberally construe Ahmad as having raised both substantive due process and procedural due process and will discuss each in turn.

Ahmad's opposition brief reasserts that his Fourteenth Amendment rights were violated but does not address this argument. Doc. 46 at 1.[7]

Under the Due Process Clause of the Fourteenth Amendment, "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations and citations omitted). "A substantive due process claim is considered duplicative of a claim pursuant to another Amendment where it rests on the same underlying conduct and seeks to remedy the same harm." *Wheeler v. City of Middletown*, No. 16 Civ. 8857 (VB), 2021 WL 2206490, at *7 (S.D.N.Y. June 1, 2021).

To analyze a substantive due process claim, a court must first "identify the constitutional right at stake." *Teichmann v. New York City Employees' Retirement System*, No. 21 Civ. 5082 (LGS), 2022 WL 4237110, at *3 (S.D.N.Y. Sept. 14, 2022) (quoting *Hurd v. Fredenburgh*, 984 F.3d 1075, 1087 (2d Cir. 2021)). If the plaintiff has alleged that a constitutional right has been violated, the plaintiff must then plausibly allege that an officer's conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008).

In support of his substantive due process claim, Ahmad alleges that Hu issued multiple tickets and initiated criminal proceedings against him without legal basis or probable cause. Doc. 1 ¶ 36–37. While this concerns the same underlying conduct as

---

[7] The MTA Defendants argue that Ahmad's failure to respond to this argument is an independent ground for dismissal. Doc. 50 at 7. When a plaintiff fails to address defendant's arguments on a motion to dismiss a claim, the claim is deemed abandoned and dismissal is warranted on that ground alone. *Marvin v. Peldunas*, No. 16 Civ. 1456 (NSR), 2020 WL 5548823, at *7 (S.D.N.Y. Sept. 16, 2020) (dismissing a *pro se* plaintiff's claims on abandonment grounds). Ahmad's failure to address the defects in his substantive due process claim therefore also warrants dismissal.

Ahmad's Fourth Amendment claim, it seeks to remedy a different kind of harm. In Ahmad's Fourth Amendment claim, the alleged harm arose from Hu's stop and seizure, whereas the harm here arises from Hu allegedly issuing citations against him without probable cause. Therefore, Ahmad's substantive due process claim will not be dismissed on the ground that it ought to be covered by the Fourth Amendment. *See Wheeler*, 2021 WL 2206490, at *7–8 (denying a motion to dismiss a plaintiff's substantive due process claim as duplicative of his Fourth Amendment claims because the claim sought to remedy harm resulting from the defendants' alleged actions subsequent to the plaintiff's arrest).

However, the Court dismisses Ahmad's substantive due process claim *sua sponte*. *See Ashmore v. Prus*, 510 F. App'x 47, 48 (2d Cir. 2013) ("[A] district court has the inherent authority to *sua sponte* dismiss a complaint as frivolous where it lacks an arguable basis either in law or in fact.") (internal quotations and citations omitted). Ahmad offers no plausible allegation that Hu's conduct was egregious because an officer giving a driver a citation for an observed traffic violation does not shock the conscience. *Cf. Kelly v. Rice*, 375 F. Supp. 2d 203, 209 (S.D.N.Y. 2005) ("Nothing about the issuance of a parking ticket implicates the rarely-used doctrine of substantive due process.") (internal quotations omitted); *Peruta v. City of Hartford*, No. 3:09 Civ. 1946 (VLB), 2012 WL 3656366, at *10 (D. Conn. Aug. 24, 2012) (holding that giving plaintiff a parking ticket, even if she had no notice that she had to pay for parking, did not shock the contemporary conscience). Therefore, Ahmad has failed to plausibly allege a substantive due process claim.

*a. Leave to Amend Would Be Futile*

Granting Ahmad leave to amend his complaint will not solve the legal defect that Hu's conduct was not egregious. There is no indication that, if given leave to amend, Ahmad could state a valid substantive due process claim. *See Hamilton v. City of New York*, No. 24 Civ. 2550 (CM), 2025 WL 415836, at *3 (S.D.N.Y. Feb. 6, 2025)

(dismissing a substantive due process claim with prejudice where the plaintiff could not plead facts tending to show that an officer's conduct was conscience-shocking).

Accordingly, the Court dismisses Ahmad's Fourteenth Amendment substantive due process claim with prejudice.

*3. Abuse of Criminal Process Claim*

The MTA Defendants argue that the abuse of process claim must be dismissed because Hu had probable cause to stop Ahmad and because Ahmad failed to plead a collateral objective in his complaint. Doc. 40 at 9–10. Ahmad's opposition does not assert any collateral objective and does not address this argument.[8]

In New York, an abuse of process claim can be maintained against a defendant who: "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). To satisfy the collateral objective element, the plaintiff must prove that the defendant acted with an aim to achieve an improper purpose beyond or in addition to his criminal prosecution. *Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009). In this Circuit, an abuse of civil process claim does not give rise to § 1983 liability and is therefore only cognizable as a state tort claim. *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). However, malicious abuse of criminal process is cognizable as a federal claim pursuant to 42 U.S.C. § 1983. *Cook v. Sheldon*, 41 F.3d 73, 79–80 (2d Cir. 1994); *see also DeMartino v. New York State Department of Labor*, 712 F. App'x 24, 26 (2d Cir. 2017) ("[W]e recognize claims under § 1983 only for abuse of criminal process, not abuse of civil process.").

---

[8] Ahmad's failure to address the defects in his abuse of process claim is an independent ground to dismiss the claim. *See Marvin*, 2020 WL 5548823, at *7.

Though Ahmad does not make it expressly clear, at least some of his allegations appear to be an abuse of criminal process claim.[9] *See* Doc. 1 ¶¶ 36–37 (alleging that the defendants initiated criminal proceedings against him). But the complaint makes no allegation that Hu had a collateral objective, which is an independent ground for dismissal. *See Crespo v. Rivera*, No. 16 Civ. 708 (PGG), 2018 WL 4500868, at *15 (S.D.N.Y. Sept. 19, 2018) (dismissing an abuse of process claim for lack of any factual allegation that the detectives acted with improper purpose). Ahmad does not plead any facts suggesting that Hu had an improper purpose beyond broad allegations of harassment and retaliation, which do not constitute a collateral purpose. *See* Doc. 1 ¶ 36; *Barkai v. Nuendorf*, No. 21 Civ. 4060 (KMK), 2023 WL 2691712, at *35 (S.D.N.Y. Mar. 29, 2023) (noting that an allegation of retaliatory harassment was insufficient to establish a collateral objective). Therefore, Ahmad has not pleaded the elements of abuse of process.[10]

*a. Leave to Amend Would Be Futile*

Leave to amend this claim would be futile because there is no indication that Hu had any improper purpose outside of the legitimate end of citing a traffic violation. *See Sanchez v. Ehrlich*, No. 16 Civ. 8677 (LAP), 2018 WL 2084147, at *10 (S.D.N.Y. Mar. 29, 2018) (dismissing an abuse of process claim where the plaintiff did not show that defendants used the legal process for a purpose outside of legitimate ends).

Accordingly, the Court dismisses Ahmad's abuse of criminal process claim with prejudice.

---

[9] The complaint also alleges that the defendants committed an abuse of process by issuing Ahmad multiple tickets without legal basis. Doc. 1 ¶ 36. The traffic infractions at issue here are punishable by civil fine and do not impose criminal penalties. *See* N.Y. Veh. & Traf. Law § 402(8). Therefore, this is an abuse of civil process claim, which is not cognizable as a federal claim. *See Spear*, 954 F.2d at 67. The Court will address Ahmad's abuse of civil process claim alongside his other state law claims.

[10] To the extent that Ahmad means to assert a claim of abuse of criminal process against the City for the conduct of the Queens prosecutors who charged him, this is also unavailing. *See Scalpi v. Town of East Fishkill*, No. 14 Civ. 2126 (KMK), 2016 WL 858955, at *6 n.7 (S.D.N.Y. Feb. 29, 2016) ("[C]ourts in the Second Circuit have routinely held that a municipality cannot be held liable for a district attorney's prosecutorial decisions.").

*4. Deprivation of Rights Under Color of Law Claim*

The MTA Defendants argue that 18 U.S.C. § 242 is a criminal statute that does not provide a private right of action. Doc. 40 at 15. Ahmad does not address this argument.

Section 242 of Title 18 of the U.S. Code is a criminal statute prohibiting persons "under color of any law" from depriving "any rights, privileges, or immunities secured or protected by the Constitution or the laws of the United States." 18 U.S.C. § 242. It is well established that this statute does not provide a private right of action. *Davis v. Horton*, No. 23 Civ. 00885 (JPC) (VF), 2025 WL 539658, at *7 (S.D.N.Y. Jan. 27, 2025), *report and recommendation adopted,* No. 23 Civ. 885 (JPC) (VF), 2025 WL 522486 (S.D.N.Y. Feb. 18, 2025); *Foster v. State Department of N.Y.*, No. 24 Civ. 5734 (LTS), 2024 WL 4635313, at *3 (S.D.N.Y. Oct. 30, 2024); *Hill v. Didio*, 191 F. App'x. 13, 14–15 (2d Cir. 2006). Ahmad, as a private citizen, cannot state a claim under this statute.

*a. Leave to Amend Would Be Futile*

Leave to amend this claim is futile because there is no way to cure Ahmad's lack of a right to state a claim.

Accordingly, the Court dismisses Ahmad's 18 U.S.C. § 242 claim with prejudice.

## VI. THE CITY'S MOTION TO DISMISS THE FEDERAL CLAIMS

The Court notes at the outset that the federal claims discussed above were asserted jointly against the City and the MTA Defendants, and the substantive legal defects identified above apply in equal part to the federal claims against both defendants. The Court therefore dismisses those claims against the City as well. Because the City identifies additional defects with the complaint, the Court also addresses those arguments.

### A. Fourth Amendment Claim Based on Malicious Prosecution

The City argues that Ahmad has merely recited the statutory elements of malicious prosecution and has failed to plead sufficient facts to support the claim. Doc. 51 at 6–7.[11]

---

[11] The MTA Defendants state that they do not address the malicious prosecution claim because it is not presently before the Court. Doc. 50 at 8 n.3. As discussed above, the Court considers Ahmad's malicious prosecution claim because it is encompassed in his complaint. *See* Doc. 1 ¶¶ 14, 16 (alleging malicious prosecution); *see also Davila*, 343 F. Supp. 3d at 267.

Ahmad argues that he has plausibly alleged each required element of malicious prosecution. Doc. 46 at 3.[12]

Malicious prosecution is cognizable as a federal claim pursuant to § 1983. *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 166 (S.D.N.Y. 2007). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted). "To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotations omitted).

The Court agrees that Ahmad has not alleged facts to plausibly support the elements of this claim. As a preliminary matter, Ahmad fails to allege that Hu had any part in filing charges or otherwise initiating the criminal proceedings.[13] *See Nickey v. City of New York,* No. 11 Civ. 3207 (RRM) (RLM), 2013 WL 5447510, at *6–7 (E.D.N.Y. Sept. 27, 2013) (noting that "officers' alleged involvement in plaintiff's arrest alone cannot form the basis of liability for malicious prosecution" but that officers may be liable for initiating a prosecution "by filing charges or other accusatory instruments"). Because Ahmad stated that Hu never arrested him and only generally alleged that Hu "issued multiple citations," Ahmad did not plausibly allege that Hu initiated criminal

[12] Ahmad does not make clear whether he asserts malicious prosecution as a federal or state claim, but he addresses this claim in his opposition brief separately from his discussion of state law claims. *See* Doc. 46 at 3–4. Therefore, the Court will first analyze the claim as federal and then address a state claim of malicious prosecution alongside the other state claims asserted.

[13] To the extent that Ahmad means to assert a claim of malicious prosecution against the City for the conduct of Queens prosecutors, this is also unavailing. *See Scalpi*, 2016 WL 858955, at *6 n.7.

proceedings against him sufficient to form the basis of liability for a malicious prosecution claim.

In any event, Ahmad does not allege facts sufficient to maintain the other elements of a malicious prosecution claim. Ahmad alleges that a criminal proceeding arising from this incident was initiated against him and that this proceeding was terminated as "legally insufficient." *See* Doc. 1 ¶ 14.[14] Because they were terminated as legally insufficient, they were not terminated in his favor within the meaning of a malicious prosecution claim. *See Gem Financial Service Inc. v. City of New York*, No. 13 Civ. 1686 (MKB), 2014 WL 1010408, at *10 (E.D.N.Y. Mar. 17, 2014) (noting that dismissals based on legal insufficiency are not decided on the merits, so they cannot provide a basis for favorable termination). Additionally, Ahmad does not provide any factual support for his allegation that there was no probable cause for commencing the criminal proceeding. *See Dava v. City of New York*, No. 1:15 Civ. 08575 (ALC), 2016 WL 4532203, at *6 (S.D.N.Y. Aug. 29, 2016) (holding that conclusory allegations are insufficient to establish a lack of probable cause for a malicious prosecution claim). Ahmad also fails to allege any facts supporting the allegation that any of the Defendants were motivated by actual malice. *See Doe v. Du*, No. 24 Civ. 00059 (ARR), 2025 WL 1456537, at *6 (E.D.N.Y. May 21, 2025) ("Conclusory allegations of malice, with no factual basis or grounds to infer maliciousness, are insufficient to establish a malicious prosecution claim." (citation omitted)). Accordingly, Ahmad's malicious prosecution is dismissed.

*1. Leave to Amend Would Be Futile*

Granting Ahmad leave to amend his complaint cannot solve the substantive legal defects that Hu did not initiate criminal proceedings against him and that a charge

---

[14] Ahmad also cites multiple other criminal citations. *See* Doc. 1-1 at 1–4. Because Ahmad does not allege that any of these citations arose from the incident at issue, they are not relevant for the present analysis.

dismissed as legally insufficient is not a favorable termination. There is no indication that, if given leave to amend, Ahmad could state a valid malicious prosecution claim.

Accordingly, the Court dismisses Ahmad's federal malicious prosecution claim with prejudice. Because this ground for dismissal applies equally to the MTA Defendants, this dismissal applies to those defendants as well.

**B. Municipal Liability**

The City argues that Ahmad's complaint fails to plausibly allege that the City is subject to municipal liability pursuant to *Monell*, 436 U.S. 658, because: (1) Ahmad fails to allege that the City had a specific policy or custom that caused Ahmad to be subjected to denial of a constitutional right; (2) the policy that Ahmad does name, "Operation Plate Check," was led by New York State, not the City of New York; (3) there is no constitutional right to have an alternative license plate, so Ahmad was not denied a constitutional right; and (4) Ahmad did not allege that the City was on notice that any TBTA employee lacked proper training. Doc. 38 at 9–12. Ahmad argues that the City is subject to municipal liability because it was the moving force behind repeated vehicle stops and ongoing enforcement practices targeting vehicles based on assumptions rather than reasonable suspicion. Doc. 46 at 3–4.

Section 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under § 1983, there is no vicarious or *respondeat superior* liability. *Rivera v. Metropolitan Transit Authority*, 750 F. Supp. 2d 456, 463 (S.D.N.Y. 2010). Rather, to hold a municipality liable for violations by its employees, a plaintiff must show that "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Board of County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 404 (1997)) (emphasis in original). This requires alleging that "(1)

an official policy or custom (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

A plaintiff may satisfy the "custom or policy" requirement by alleging:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so *consistent and widespread* that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a *failure by policymakers to provide adequate training or supervision* to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted) (emphasis added). Under any of these theories, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Commissioners*, 520 U.S. at 404. Importantly, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal quotations omitted) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)).

Ahmad argues that Defendants engaged in a "custom, policy, or practice" to "improperly stop vehicles with alternative plates." Doc. 1 ¶ 30. He supports this assertion by stating that the stop at issue was part of what was "later announced by the Governor's Office as 'Operation Plate Check,' a state-led enforcement campaign targeting alternative license plates." Doc. 1 ¶ 10. By Ahmad's own admission, the policy was enforced by the State of New York—not the City of New York. Because *Monell* liability requires that the named defendant was the moving force behind the constitutional

violation, Ahmad has failed to plausibly allege that the City was the moving force behind this policy. *See Rivera*, 750 F. Supp. 2d at 463.

In the absence of an expressly authorized policy, a plaintiff may premise *Monell* liability on a custom so widespread that the municipality must have been aware of it. *See Brandon*, 705 F. Supp. 2d 261 at 276–77. To support his allegation that there was a custom of "discretionary traffic-stop expansion" and "suspicion-based investigatory policing," Ahmad cites a single ongoing case, *NAACP New York State Conference et al. v. City of New York et al*., No. 1:26-cv-00754 ("the *NAACP* case"). *See* Doc. 47 at 1 (stating that the allegations in that case remain "pending and unproven"). The Court will not rely on unproven and pending allegations from complaints filed in other lawsuits as factual support for Ahmad's conclusory allegations. *See Cruz v. City of New York*, No. 15 Civ. 2265 (PAE), 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) (holding that non-adjudicated claims did not establish a custom for purposes of *Monell* liability). In any event, the *NAACP* case makes no claims about private trust plates, private plates, alternative plates, or N.Y. Vehicle & Traffic Law § 402. Therefore, even if the Court were to find that a pending case was relevant for determining *Monell* liability, the *NAACP* case does not lend any support to the proposition that the City was aware of a custom of targeting "alternative plates."

Ahmad also argues that the City failed to train or supervise officers, which foreseeably led to unconstitutional stops. Doc. 1 ¶ 31. As a preliminary matter, the City asserts that Hu is not under the City's control, which Ahmad does not dispute. Doc. 38 at 11. Ahmad's failure to address this defect is an independent ground to find that the City is not municipally liable for failing to train Hu. *See Marvin*, 2020 WL 5548823, at *7. Moreover, a plaintiff must plausibly allege that the municipality was deliberately indifferent to find *Monell* liability on the basis of failure to train. *See Missel v. County of Monroe*, 351 F. App'x. 543, 546 (2d Cir. 2009). Ahmad only makes conclusory allegations that the City was deliberately indifferent, which is insufficient. *See id.* (noting

that a plaintiff must allege that the need for better supervision was "obvious" and that the defendant "made no meaningful attempt to prevent the constitutional violation" to plausibly allege deliberate indifference). Therefore, Ahmad has also not plausibly alleged municipal liability on the basis of failure to train.

Further, a plaintiff must plead the violation of a constitutional right to establish *Monell* liability. *Wray*, 490 F.3d at 195. For the reasons already set forth above, Ahmad has not plausibly alleged a violation of any constitutional right.

Accordingly, Ahmad has failed to show that the City is municipally liable for claims arising from Hu's conduct.

## VII. REMAINING FEDERAL CLAIMS

The Court understands Ahmad to assert additional federal claims that Defendants do not expressly address in their motions to dismiss. Nonetheless, the Court concludes that each claim warrants *sua sponte* dismissal.

### A. Double Jeopardy

In a statement attached to his complaint, Ahmad briefly alleges that he was pursued under the same or substantially similar allegations in violation of the Double Jeopardy Clause of the Fifth Amendment, as incorporated against the states through the Fourteenth Amendment. Doc. 1-1 at 3.[15]

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. "The Double Jeopardy Clause confers its protections in three different situations—where there is a second prosecution for the same offense after acquittal of that offense; where there is a second prosecution for the same offense after conviction of the offense; and where there are multiple punishments for the same offense." *United*

[15] The Court will consider this claim even though it was not explicitly listed as a claim for relief in the complaint because Ahmad is a *pro se* litigant. *See Herbert*, 2025 WL 1268863, at *3.

*States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003). "A double jeopardy claim cannot succeed unless the charged offenses are the same in fact and in law." *Id.*

The Court dismisses Ahmad's double jeopardy claim *sua sponte* as frivolous because it lacks an arguable basis in fact and law. In support of his claim, Ahmad provided the Court with several examples of legal proceedings against him. *See* Doc. 1-1 at 1–3 (asserting that he was charged with the following: (1) N.Y. Veh. & Traf. Law § 511.2(a) on an unspecified date; (2) unspecified charges on December 2, 2022; (3) aggravated unlicensed operation, which was reduced to a lesser violation, and other unspecified charges, which were dismissed or sealed on May 16, 2023, September 11, 2023, and October 16, 2023; (4) unspecified charges on May 24, 2024; (5) Penal Law §§ 170.20 and 195.05 and N.Y. Veh. & Traf. Law §§ 511.01(a) and 509.1 on May 30, 2025; (6) N.Y. Veh. & Traf. Law § 1212 on September 26, 2023; and (7) three tickets for having an unregistered vehicle for more than 60 days, being unlicensed for more than 60 days, and operating without insurance on February 22, 2024). However, merely stating that he has been charged multiple times for different driving-related offenses on different dates is not sufficient to plausibly suggest that he has been prosecuted or punished twice for the same offense in fact (i.e., based on the same underlying conduct). *See United States v. Bruno*, 159 F. Supp. 3d 311, 315 (E.D.N.Y. 2016) ("When making a claim for double jeopardy, a defendant must first 'make a colorable showing that the crimes are the same.'" (quoting *United States v. Basciano,* 599 F.3d 184, 197 (2d Cir. 2010))). Ahmad's failure to plausibly allege that he was prosecuted more than once for the same offense in fact warrants dismissal of this claim.

Ahmad's complaint does not provide sufficient facts for the Court to determine either way whether these citations arose out of the same offense in fact. Accordingly, the Court dismisses Ahmad's double jeopardy claim without prejudice.

**B. Procedural Due Process**

Ahmad's complaint alleges that Defendants initiated citations to be directed for adjudication in Queens—rather than the Bronx where he was stopped—and caused him to defend against legally insufficient and retaliatory charges, which constituted a "denial of liberty and property without due process." Doc. 1 ¶¶ 11, 27. The Court construes this as a procedural due process claim.

To allege a procedural due process violation, a plaintiff must plead facts plausibly showing that he possessed a protected liberty or property interest and that he was deprived of that interest without a constitutionally sufficient process. *Impellizzeri v. New York*, No. 21-2828-CV, 2023 WL 2171018, at *2 (2d Cir. Feb. 23, 2023).

The Court dismisses this claim *sua sponte* as frivolous because it lacks an arguable basis in fact and law. Taken as true, Ahmad's allegations do not support a due process violation because does he does not identify a protected liberty or property interest of which he was deprived. He states that the citations were dismissed in full, *see* Doc. 1 ¶ 13, and does not claim that he had to pay any fine or that he was detained as a result of these citations.[16] On these facts, Ahmad has failed to state a claim that he was deprived of any cognizable interest protected under due process. *See Johnson v. Tudisco*, No. 17 Civ. 8621 (NSR), 2020 WL 363647, at *6 (S.D.N.Y. Jan. 21, 2020) (dismissing a procedural due process claim because the plaintiff did not allege that he was wrongfully incarcerated or otherwise deprived of any protected interest); *cf. Kiraka v. Success Academy Charter School, Hudson Yards*, No. 24 Civ. 02354 (MMG), 2026 WL 890621, at *11 (S.D.N.Y. Mar. 31, 2026) (dismissing a procedural due process claim because the plaintiff did not have a property interest in obtaining a free public education in a state in which they did not reside). Moreover, to the extent that he successfully challenged the citations in court, he received all the process that was due. *See Kelly*, 375 F. Supp. 2d at

[16] Ahmad claims that he was effectively subjected to custodial detention when he was stopped by Hu. *See* Doc. 1 ¶ 15. This is not relevant for the instant analysis because that alleged detention occurred at the same time as the issuance of the citations, rather than as a consequence of the citations.

210 (dismissing procedural due process claim because plaintiff got all the process she was due insofar as she got a ticket, fought the ticket in traffic court, and won).

*1. Leave to Amend Would Be Futile*

Granting Ahmad leave to amend his complaint cannot solve the legal defect that the issuance of a traffic citation which was later dismissed did not deprive him of a protected interest. There is no indication that, if given leave to amend, Ahmad could state a valid procedural due process claim.

Accordingly, the Court dismisses Ahmad's Fourteenth Amendment procedural due process claim with prejudice.

**C. Additional Federal Claims**

To the extent that Ahmad asserts negligence, gross negligence, and intentional infliction of emotional distress as federal claims pursuant to § 1983, those claims are not cognizable under § 1983. *Bonner v. New York City Police Department*, No. 99 Civ. 3207 (AGS), 2000 WL 1171150, at *5 (S.D.N.Y. Aug. 17, 2000) ("Negligence is not actionable under section 1983."); *Elliot v. City of New York*, No. 06 Civ. 296 (KMK), 2008 WL 4178187, at *10 (S.D.N.Y. Sept. 8, 2008) ("It is well settled that claims sounding in negligence—even gross negligence, or negligence that results in grievous injury—cannot be disguised as constitutional claims and brought in a federal court under 42 U.S.C. § 1983."); *Blanco v. Success Academy Charter Schools Inc.*, 722 F. Supp. 3d 187, 217 (S.D.N.Y. 2024) ("There is no recognized claim for intentional infliction of emotional distress under section 1983.").

*1. Leave to Amend Would Be Futile*

Leave to amend this claim is futile because there is no way to cure Ahmad's lack of a right to state these claims pursuant to § 1983.

Accordingly, the Court dismisses Ahmad's federal negligence, gross negligence, and intentional infliction of emotional distress claims with prejudice.[17]

## VIII. SUPPLEMENTAL JURISDICTION

Ahmad bases the subject matter jurisdiction for his federal claims on federal question jurisdiction pursuant to 28 U.S.C. § 1331. Doc. 1 ¶ 3. The City asks the Court to decline to exercise supplemental jurisdiction over any of Ahmad's state claims because there are no meritorious federal claims. Doc. 38 at 15.

Federal district courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 27 (2025) (stating that supplemental jurisdiction applies to state-law claims that arise "from the same facts" as a federal-law claim over which a court has original jurisdiction). Supplemental jurisdiction represents "a doctrine of discretion, not of plaintiff's right." *Kolari v. New York-Presbyterian Hospital*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Section 1367(c) lists circumstances in which a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a)." 28 U.S.C. § 1367(c). One such circumstance is where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

In light of the Court's dismissal of all federal claims, the Court declines to exercise supplemental jurisdiction over Ahmad's state law claims, including his claims of violations of the New York Constitution and New York state tort laws. Accordingly, these

[17] Ahmad also asserts in his complaint and opposition that Hu is not entitled to qualified immunity. Doc. 1 ¶ 11; Doc. 46 at 4. The Court does not address this issue because Hu does not move to dismiss based on qualified immunity, and, in any event, Ahmad does not plausibly plead a constitutional violation. *See Grubbs v. Ngbodi*, No. 21 Civ. 02906 (NSR), 2022 WL 4072926, at *10 (S.D.N.Y. Sept. 2, 2022) ("Because the Plaintiff fails to state any claim, the Court need not assess at this time whether the Defendants are entitled to qualified immunity.").

state claims are dismissed without prejudice. *See Brown v. Brooklyn Industries LLC*, No. 13 Civ. 3695 (RA), 2015 WL 1726489, at *3 (S.D.N.Y. Apr. 15, 2015) ("As the Court declines to exercise supplemental jurisdiction, a dismissal without prejudice is appropriate.").

## IX. CONCLUSION

For the aforementioned reasons, the City and the MTA Defendants' motions to dismiss Ahmad's federal claims pursuant to Rule 12(b)(6) are GRANTED with prejudice. Ahmad's double jeopardy claim is dismissed without prejudice. Because the Court declines to assert supplemental jurisdiction over Ahmad's state law claims, these claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the motions, Docs. 36 and 39, and to close the case.

It is SO ORDERED.

Dated: September 28, 2026
New York, New York

EDGARDO RAMOS, U.S.D.J.